**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X
JANE DOE,

       Plaintiff,

  -against-

DARREN K. INDYKE and RICHARD D. KAHN, in their
capacities as executors of the ESTATE OF JEFFREY E.
EPSTEIN;

       Defendants.
-------------------------------------------------------------------------X

**COMPLAINT**

Plaintiff, Jane Doe, by her attorneys, Kaiser Saurborn & Mair, P.C., as and for her complaint against the defendants, alleges as follows:

**I.**

**BACKGROUND**

1.  Jane Doe seeks justice for the sexual crimes perpetrated against her by Jeffrey Epstein over the course of many years and for the abuse, manipulation and exploitation she suffered at his hands. Epstein identified Jane Doe as an extremely emotionally vulnerable young woman who, at the time she met him, had been entirely abandoned by her community, friends, and family which enabled him to seduce her into his world of horrific abuse.  Every aspect of her life was controlled by Epstein. He dominated her psychologically. Jane Doe was constantly emotionally bullied and coerced by Epstein, including being required to submit to his constant sexual abuse. This lawsuit is about Jane Doe claiming her power, becoming a survivor, not a victim, and getting restitution for the sexual crimes perpetuated against her.  She has real damages that are lasting: 1) She has permanent emotional injuries; 2) Her capacity to pursue a professional career has been severely compromised; 3) Her name and reputation has been ruined;

and 4) she is virtually bankrupt, having been forced to spend most of her resources defending herself against false accusations, all of which stem from Epstein's crimes.

2. The Estate of Jeffrey E. Epstein, who perpetrated crimes of sexual abuse, sexual assault and rape against Jane Doe, must be held responsible for ruining her life. It has been nearly 19 years since Jane Doe was recruited by Jeffrey Epstein and Ghislaine Maxwell and plunged into a world in which she was psychologically, physically and sexually exploited and controlled for years.

3. Jane Doe was a naïve and uniquely vulnerable 22-year old when Epstein and Maxwell first preyed upon her.

## II.

## JURISDICTION

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims asserted herein arise under 18 U.S.C. § 1591-1595.

5. Venue is properly laid in this District pursuant to 28 U.S.C. § 1391 because it is a District in which much of the alleged wrongdoing occurred.

## III.

## THE PARTIES

6. Plaintiff is a sex trafficking victim of Epstein.

7. At all times relevant herein, Jeffrey Edward Epstein ("Jeffrey Epstein" or "Epstein") maintained a residence and businesses at 9 East 71st Street, New York, NY 10021 ("Epstein's NY Residence") which was the location where Epstein committed repeated sexual assaults of young women, like Plaintiff, and engaged in sex trafficking.

8. At all times relevant herein, Epstein was an adult male over the age of 48, born on

January 20, 1953, and who died on August 10, 2019.  He continued to maintain a residence and businesses at 9 East 71st Street, New York, NY 10021, and occupy it until his death.

9. At all times relevant herein, Defendant, Darren K. Indyke, is named in his personal capacity as an appointed executor of the Estate of Jeffrey E. Epstein (the "Estate of Jeffrey E. Epstein"), which was opened and domiciled in the United States Virgin Islands, St. Thomas Division, and is the legal entity responsible for intentional, criminal, and tortious conduct committed by Jeffrey Epstein as described in this Complaint.  The Estate of Jeffrey E. Epstein includes Epstein's NY Residence, which was occupied by Jeffrey Epstein and his businesses until his death and was one of the locations where repeated acts of sexual abuse and sex trafficking against various women, including plaintiff, occurred.

10. At all times relevant herein, Defendant, Richard D. Kahn, is named in his personal capacity as an appointed executor of the Estate of Jeffrey E. Epstein (the "Estate of Jeffrey E. Epstein").

11. At all times relevant herein, Defendant, Darren K. Indyke, is named in his personal capacity as an appointed executor of the Estate of Jeffrey E. Epstein (the "Estate of Jeffrey E. Epstein").

12. At all times relevant herein, Jeffrey Epstein (legally represented now through Darren K. Indyke and Richard D. Kahn as Executors of the Estate of Jeffrey E. Epstein (and referred to herein as the "Estate of Jeffrey E. Epstein"), owed a duty to Plaintiff to treat her in a non-negligent manner and not to commit, or conspire to commit, or cause to be committed, intentional, criminal, fraudulent, or tortious acts against Plaintiff, including any acts that would cause Plaintiff to be harmed through conduct committed against her in violation of the TVPRA.

3

IV.

**EPSTEIN'S SEX TRAFFICKING CRIMINAL ENTERPRISE**

13. At all times relevant herein, Jeffrey Epstein ["Epstein"] was an extremely wealthy financier, who used his wealth, power, resources, and connections to commit illegal sexual crimes in violation of the TVPRA, and to employ and conspire with other corporate entities, private foundations and trusts, to assist him in committing those sexual crimes or torts or to facilitate or enable those acts to occur.

14. Epstein displayed his enormous wealth, power, and influence to his employees; to the employees of the corporate entities, private foundations, and trusts, who worked at his direction; to the victims procured for sexual purposes; and to the public, in order to advance and carry out and conceal his crimes and torts.

15. At all times relevant herein, Epstein had access to numerous mansions, a fleet of airplanes, motor vehicles, boats and several helicopters.

16. At all times relevant herein, Jeffrey Epstein travelled between and frequently inhabited and travelled between numerous properties and homes, including a Manhattan townhome located at 9 East 71st Street, New York, NY 10021 valued conservatively by Jeffrey Epstein's own admission at $55,931,000.00; a ranch located at 49 Zorro Ranch Road, Stanley, New Mexico 87056 valued conservatively by Jeffrey Epstein's own admission at $17,246,208.00; a home located at 358 El Brillo Way, Palm Beach, Florida 33480 valued conservatively by Jeffrey Epstein's own admission at $12,380,209.00; an apartment located at 22 Avenue Foch, Paris, France 75116 valued conservatively by Jeffrey Epstein's own admission at $8,672,820.00; and an Island Little St. James Island No. 6B USVI 00802 (A, B, C).

17. As has been publicly reported, Epstein had a compulsive sexual preference for

young females and took pleasure in corrupting vulnerable young females into engaging in sexual acts with him.  The allegations herein primarily concern Jeffrey Epstein's conduct while at his NY, Virgin Islands, Florida, New Mexico, and Paris residences and other locations.

18. Epstein fulfilled his compulsive need for sexual contact with and control over young females by preying on their personal, psychological, financial, and related vulnerabilities. Epstein's tactics included promising the victims shelter, transportation, gifts, money and employment, admission into educational institutions, educational tuition, protection, illusion of family and other things of value in exchange for sex.

19. Jeffrey Epstein specifically targeted underprivileged, emotionally vulnerable and/or economically disadvantaged young females exactly like Plaintiff to sexually molest and abuse.

20. Epstein's continuous psychological and physical control over Jane Doe facilitated his sexual abuse of her on a relatively consistent basis for many years.

21. The sexual abuse took many forms including Epstein's rape of Plaintiff.

22. He would also enter plaintiff's room and get into her bed while she was sleeping and then fondle or penetrate her with his fingers. This occurred often and repeatedly.

23. He often directed her to undress and pose in certain ways and/or touch him and herself while he masturbated.  This occurred often and repeatedly.

24. Epstein frequently directed Jane Doe to turn her head back during their sexual encounters, telling her that he did not want to see her face.

25. Epstein also repeatedly required Jane Doe to bathe with him and perform oral sex on him.

26. This occurred in New York, Palm Beach, New Mexico, London, Paris, on

Epstein's private island, on Epstein's airplanes and other locations.

27. Jane Doe was paid in part to be sexually available to Epstein.

28. In or about January or February 2012, Epstein grabbed Plaintiff by the hand while at his New York City Residence and took her to a small room on the third floor. It was a room with two chairs in it. He sat her down, pulled her pants down, covered her eyes, and used a vibrator on her. Epstein laughed afterwards.

## CAUSE OF ACTION I AGAINST EPSTEIN

29. Defendant, within the special maritime and territorial jurisdiction of the United States, in interstate and foreign commerce, and/or affecting interstate and foreign commerce, knowingly recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, solicited, threatened, forced, or coerced Plaintiff to engage in commercial sex acts.

30. Such actions were undertaken knowing that Defendant Epstein's use of force, threats of force, fraud, coercion, and/or combinations of such means would be used, and were in fact used, in order to cause Plaintiff to engage in commercial sex acts. In doing so, Defendant violated 18 U.S.C. § 1591.

31. Furthermore, Defendant attempted to violate 18 U.S.C. § 1591. In doing so, violated U.S.C. § 1594(a).

32. Defendant conspired with each member of the enterprise, and with other persons known and unknown, to violate 18 U.S.C. § 1591. In so doing, Defendant violated U.S.C. § 1594(a).

33. By virtue of Defendant's violations of 18 U.S.C. §§ 1591, 1593A, and 1594, Defendant Darren K. Indyke and Richard D. Khan as Joint Personal Representatives of the Estate of Jeffrey E. Epstein is subject to civil causes of action under 18 U.S.C. § 1595 by Plaintiff, who

is a victim of the violations.

34. Certain property of Defendant was essential to the commission of the federal crimes and torts described herein, including the use of multiple private aircraft including a Boeing aircraft (of make and model B-727-31H with a tail number N908JE) and a Gulfstream aircraft (of make and model G-1159B with a tail number N909JE). Such aircraft, along with other of Defendants' property, were used as means and instruments of Defendants' tortious and criminal offenses and, as such, are subject to forfeiture.

35. Additionally, Defendant's mansion, located at 9 East 71st Street, New York, New York, in the Southern District of New York, his Palm Beach residence and his private island located in the United States Virgin Islands, and his ranch in New Mexico were among those used as means and instruments of Defendants' tortious and criminal offenses, and, as such, are subject to forfeiture.

36. As direct and proximate result of Defendant's commission of the aforementioned criminal offenses enumerated in 18 U.S.C. § 1591, 1593A, and 1594, and the associated civil remedies provide in § 1595, Plaintiff has in the past suffered and will continue to suffer injury and pain; emotional distress; psychological and psychiatric trauma; mental anguish; humiliation; confusion; embarrassment; loss of self-esteem; loss of dignity; loss of enjoyment of life; invasion of privacy; and other damages associated with actions. Plaintiff will incur further legal, medical and psychological expenses. These injuries are permanent in nature and Plaintiff will continue to suffer from them in the future. In addition to these losses, Plaintiff has incurred attorneys' fees and will be required do so in the future.

37. WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and general damages, attorneys' fees, punitive damages and such other and further relief as this

Court deems just proper. Plaintiff hereby demands trial by jury on all issues triable as of right by a jury.

**WHEREFORE,** Plaintiff demands judgment against defendants as follows:

(i) Assessing compensatory damages and punitive damages in an amount to be determined at trial;

(ii) Attorney's fees and interest, and disbursements; and

(iii) For such other relief as the Court deems just and proper.

Dated: New York, New York
March 17, 2020

                                          **KAISER SAURBORN & MAIR, P.C.**

By: _____
      Daniel J. Kaiser, Esq.
      William H. Kaiser, Esq.

      Attorneys for Plaintiff
      30 Broad Street, 37th Floor
      New York, New York 10004
      (212) 338-9100